Well, the next case, please. 3 11 0 2 5 8. Andre Harrison, Caleb Brent Logan versus Sean Maddox, Abilene Cameron Davidson. Mr. Bogan. Good morning, your honors. May it please the court, counsel. This is an appeal that arose from a trial that was conducted in October of 2010 based on two claims that arose out of a defamation per se claim and also an intentional interference with employment. The trial court in particular made two rulings during that trial that the plaintiff believes are reversible error. First of all, the trial judge ruled on the morning of trial that via a motion in limine that the defamation statements were subject to a qualified privilege. The other issue is that the judge granted a directed verdict to the defendant on the intentional interference claim. I'd like to talk about the intentional interference claim first, actually. The general factual background of this case is that the plaintiff, Mr. Harrison, had been out with some of his co-workers on a Friday evening and they had gone out to a few bars and they eventually ended up back at his apartment. It was Mr. Harrison, a co-worker who he was having a relationship with, and another co-worker who was an indirect employee of his who reported to him, and her boyfriend. They all ended up back at his apartment and they spent some time there and after that everybody went home. That was a Friday night. The Sunday following, the defendant in this matter, Mr. Maddox, placed a call to Mr. Harrison's superiors claiming that Mr. Harrison had raped his daughter, Alyssa Maddox, who had been out with the plaintiff on that Friday night proceeding. At trial, the claim that Mr. Harrison raped the defendant's daughter was proven to be false. The defendant also claimed that Mr. Harrison had a warrant out for his arrest and related that to Mr. Harrison's supervisor and that also turned out to be false. Also, during the investigation, Mr. Maddox claimed that Mr. Harrison was having an improper relationship of a sexual nature with the woman, Ms. Spielbert, one of Mr. Harrison's co-workers who was also out with him that Friday night. Now, with regard to the directed verdict, it is typically the standard that a trial judge is to apply in such situations that whether all of the evidence when viewed in the light most favorable to the opponent so overwhelmingly favors the movement that no contrary verdict could ever stand. The defendant did move for this directed verdict and in the process of discussing this motion, the judge basically drew all of the inferences and viewed the evidence in the light most favorable to the movement. He basically used the opposite of the correct standard. For instance, the judge found that the defendant, when he was in the process of making the statements to the plaintiff's supervisors, that he might not have had the intent to cause Mr. Harrison's termination, which is one of the elements of an intentional interference with an employment claim. And the judge said, and this is at the record at page 49, that there could have been a number of different ways that Mr. Harrison could have been separated from the rest of the employees there, saying that maybe his intent was that Mr. Harrison might not necessarily have been fired. Let me just ask you, this intentional interference with his employment, one of the things you've got to prove is that he was fired because of something the defendant did, right? Yes. He wasn't fired because, for allegedly raping the defendant's daughter or for allegedly having a warrant out for him, was he? No, he was not. He was fired as the result of an investigation that was performed as a result of Mr. Maddox's making the false claims. Mr. Maddox, as I mentioned before, also made the claim during the investigation that Mr. Harrison was having an improper relationship with one of his co-employees. Well, that was proven, wasn't it? The investigation showed that nothing improper was occurring. Yes, they were having a consensual relationship, but the ultimate result of the investigation, and this was admitted by the investigator, was that the ultimate result of the investigation was that, according to his research, including the communications, such as emails that Mr. Harrison had had between himself and the person he was having a relationship with, did not indicate anything improper. Well, wasn't the evidence that he was having relationships, not just with that one woman, but with several employees, some of whom were married to other employees, some of whom were daughters of other employees? Well, first of all, that was never put into the record of this case, so I don't know if it would have been proper for the trial judge to base his opinion on those facts, because none of that ever made it into the record. Now, what I'd like to talk about also regarding how the trial judge erred here is that he basically attributed a lack of intent to have Mr. Harrison fired. Now, you don't have to prove by direct admission that his actual intent was to have Mr. Harrison fired. According to general principle of tort law, you can obviously have the specific desire to cause the consequences that your actions denote, but also you can, or at least, you should have the substantially certain belief that the consequences will result. Now, in this situation, Mr. Maddox made the claim that Mr. Harrison raped his daughter, he made the claim that he had a warden out for his arrest, and he also claimed that he was having an improper relationship with another employee that turned out to be consensual, and the results of the investigation showed that there was basically no issue there. I think the reasonable inference, or a reasonable inference, or view of those facts is that he did indeed at least have a substantially certain belief or knowledge that making that kind of claim would result in the consequences of Mr. Harrison being fired. And I think that the very fact that the trial court began to... Well, perhaps, but that's an alternative view of facts, and when you're discussing a motion for a directed verdict, you have to make all the inferences and draw them in favor of the non-movement, which in this case was the plaintiff. Well, let me ask you this. You do agree it was your burden in your case to prove your cause of action, right? It's a prima facie case. What evidence did you put on that any of those things of which you complained, one or more of them, were the basis or bases for the plaintiff getting fired? Well, for the prima facie case, you have to show that you have the reasonable expectation of continued employment. That was undisputedly proven at trial. Mr. Maddox admitted that during his testimony. He also admitted that he had the knowledge that Harrison was generally a good manager and that there was no reason that he thought that Mr. Harrison would ever need to be removed from his position. As far as the interference with Mr. Harrison's employment goes, Mr. Maddox intentionally called Harrison's supervisors about something that Deere admitted later on that they had no reason to investigate. When he called them regarding the rape allegations and the warrant allegations, Deere specifically limited their investigation to the third thing that Mr. Maddox alleged, which was the improper relationship. What other purpose could Mr. Maddox have had when he was alleging that Mr. Harrison had raped his daughter and that there was a warrant out for his arrest other than reacting out of anger or with the intention of having Mr. Harrison removed? I think that's a perfectly reasonable inference, a question of fact that would be proper for a jury to resolve rather than something to be resolved on a motion for a direct verdict. And also, the fourth element obviously is that Mr. Harrison was damaged and I think that's pretty clear here because he was ultimately fired just a few days later at the conclusion of the investigation. But don't you have to establish a nexus between the firing? Isn't it your burden to establish a nexus between the defendant's conduct and the discharge of your client? Well it was, first of all it was Mr. Maddox who made the initial call that prompted the investigation and then once it was discovered by Mr. Harrison's investigation that there was no warrant out for his arrest, and after further testimony during the investigation by Ms. Spielbert, who Mr. Harrison was having a relationship with, that there was no improper relationship going on, that it was consensual. The following Tuesday, I believe, when Mr. Maddox was interviewed by security personnel at Deere, he continued to assert that Mr. Harrison had been using his position to unduly influence Ms. Spielbert into having a relationship with him. So I think he was obviously the start of the investigation and his comments over the course of the investigation also I think establish a reasonable question of fact that his conduct was certainly the cause of the investigation which resulted in Mr. Harrison's firing. The other issue that I would like to make sure, well before I move on to that I would also like to talk about one argument that the appellee raises on this appeal and that is assuming that a qualified privilege applies to statements made by a defendant in the context of an intentional interference claim, there is case law that says that if a privilege applies that the defendant's actions must have been without justification. Now the defendant, Mr. Maddox, admitted on cross-examination that accusing somebody of sexual assault is a very serious allegation to make. He also admitted that he had no personal knowledge and had not conducted any investigation whatsoever into whether the rape had in fact happened or whether there was in fact a warrant out for Mr. Harrison's arrest. Furthermore, his statements to the investigator during the investigation of the alleged incidents at Deere were such that it's a reasonable interpretation of them that he acknowledged that he had some doubt as to whether the facts and circumstances surrounding his allegations were actually true. And specifically he admitted to the investigator, and this is the investigator's testimony, that Mr. Maddox stated something to the effect that if this didn't turn out to be what it looked like then he would appreciate understanding with respect to his daughter. I think that one interpretation of that is that you could say that he's feeling doubt as to whether any of these allegations are true. At this point I would like to quickly talk about the qualified privilege issue as well. At the beginning of trial the judge made a ruling that as a matter of law a qualified privilege did apply to the defamation statements, the three statements that I've been talking about. The issue that I would like to focus on is whether or not there was a proper occasion for making the statement. In this case the appellants have focused on the fact that the defamation statements were centered around actions that occurred between employees. The problem is that these statements had absolutely nothing to do with the workplace. All of the cases, for example, cited by the defendants all regard issues that either happened at the workplace or were incident to the workplace. For instance, they cited a case in which an employee was in violation of a drug policy and he was accused by one of his co-employees of being in violation of the drug policy or possessing drugs and he was thereafter fired. The court understandably found that there was a qualified privilege there because I think there is a reasonable interest that the defendant should be able to make statements like that. In this case the statements regarded activities that occurred entirely outside of the employment context. It only happened to be between employees, co-employees. They weren't co-employees, one was a supervisor. Since they're both co-employees of GEER I guess, but one had a supervisory position over the other. Yes, that's true. And you indicated that the defendant should have conducted some kind of investigation. Yes. How could he conduct an investigation without talking to anybody? Well, he could have at the very least I would say called the police, which apparently never happened because even though he alleged that there was a warrant out for Mr. Harrison's arrest there turned out not to be. And he also could have conversed with the other people who had been out with him that night. For instance, the alleged victim, Mr. Maddox's daughter, had a boyfriend at the time who was also with him at the apartment the entire time. And he, presuming that he knew him, he could very easily have contacted him to confirm what was going on. Thank you very much. Thank you, Mr. Bowman. Thank you. Mr. Davidson?  There's some misstatements in the record, but I first want to get through the actual burdens here. We did have a motion in limine that was granted on behalf of the defendants. The standard is the abuse of discretion. Of course, along with the trial court's request for a new trial, the standard is abuse of discretion. And with the intentional interference, as I think the court was looking to earlier, you have to prove some evidence as to each essential element. In this case, there's no abuse of discretion. In fact, we failed to provide evidence as to each essential element. In this case, the court has the benefit of having heard about these facts before. And we filed a request to cite self-authority, which is in the record. I insist you note that in that record, which is consistent with the trial court record here, on that Sunday, August 30th, after Mr. Maddox learned from his daughter that information, he called Denny Black, and that's the industrial relations representative, and asked him what would happen if he assaulted somebody at work. That's it. It stops there. Mr. Black tells him what would happen. The phone call could have ended right then. Mr. Black inquired about what would happen. What are you talking about? I mean, the reasonable inquiry on behalf of his employer, what are you talking about would happen at work? Obviously concerned, both of them are concerned about the potential for workplace violence, which is what the plaintiff eventually gets dismissed for. So what Mr. Maddox does is, in turn, follow the directive of his employer and answers the questions and provides the information that's given to him by Alyssa Maddox, who, of course, is another employee. We wouldn't be here today if all these people didn't work together. And in the prior record you have on page 3, everybody that's involved. But initially it's just a few people. It's Mr. Maddox that reports it to Denny Black, and Denny Black made clear at trial that he is the person he should report these things to. If he is concerned about the workplace, what could happen if he's to call the industrial relations manager? He's the right person to call. He doesn't call his direct supervisors. He doesn't call co-employees. He doesn't make an issue on the shop floor. He calls the industrial relations representative. That's exactly what he does. Then Denny Black tells him to call the head of that factory, basically, Roy DeVault. So he follows that directive, calls Roy DeVault. Roy DeVault asks him about it, has a conversation. Roy DeVault talks to him. He's in Germany, so he calls the second command at that factory and says, you need to talk to Jim Olsen, start an investigation, look into this further. So Jim Olsen calls Mr. Maddox, and Mr. Maddox answers his questions, as he should as an employee in that factory and the concerns that have been raised. And then, of course, there's the global security officer, Mark Didney, that is a part of the investigation. He's not making any of the findings, but is a part of the investigation. Then you see from the other case, there's a bunch of other people, particularly in HR, that are involved in management dependents that were dismissed out of this case. The scope at which he identified an issue is unbelievably limited. He doesn't even get into the concerns that his daughter raised without the employer asking about it. He simply is concerned what would happen in the workplace if he runs into this manager from what information he learned from his daughter. There's no evidence that Deere's investigation or discipline of Harrison was for statements that Mr. Maddox made in response to Mr. Black's request and the others. As the court has pointed out, the investigation and the discipline had nothing to do with the information that another employee, Alyssa Maddox, provided. There's no evidence that Deere investigator disciplined Harrison for Alyssa Maddox alleging a sexual assault. It's clear that that's not the case. Mr. Maddox had no control whatsoever of the investigation. The only thing he did as part of the investigation was answer questions. He didn't try to control the investigation. There's no evidence that he tried to control the investigation anyway. In fact, there's no evidence he even knew what the result of the investigation was. The only evidence is that he had a limited scope of reporting a concern of what could be workplace violence based on what he learned from his daughter, what would happen if, and then responding to the further inquiries from the industrial relations representative and providing those information to just those four people. This universe is incredibly small. Of course, when you go through the investigation, that's all the other, we call the management defendants in the other case that you heard from that knew about it. Of course, Mr. Maddox had nothing to do with that. So when you look at the qualified privilege, whether it should have been a qualified privilege, we have the test in the initial briefing. I think that there was some confusion as to what the actual test is. You look at the actual occasion itself for the communication determined as a matter of law and general policy as whether it's a recognized duty or interest to make the communication privileged. There's not this kind of looking at the law and the facts by the appellate courts. The Kewitt decision said, hey, we're just going to look at more of the law, general policy practice, and look at from a factual point of view for the abuse of discretion would be for the jury, unless there's no evidence. There's some summary judgment cases that the parties have cited. And whether that qualified privilege applies is for the court to decide. So it's proper for them to do that prior to the actual jury trial that we had. The question of abuse is a fact question, which of course in this case the jury determined it was not abuse. And where there's abuse, there is a direct intention to injure the plaintiff with reckless disregard for him. You don't look at whether it happened, where and when it happened. Of course you want to prevent the workplace violence, so you don't walk into work where you could have a potential workplace violence situation. He does the right thing and makes the call before, in recognition that this could cause a problem. The cases that I think both parties have cited make it clear that when the qualified privilege applies in this setting, when it's made by an employee to employer in the context of employment relationship, again, we're not talking about even Alyssa Maddox not working for him. Alyssa Maddox is a mail clerk. She sees Andre Harrison, the plaintiff, every day. She delivers his mail. She hands him the mail. That's an obvious concern. Sean Maddox sees him on a regular basis. That's an obvious concern. So there is certainly a context of the employment relationship. And the publication is limited. I can't really be honest with you and imagine a much more limited publication than is made here by an assembly employee out of a concern for another employee who is his daughter. As the courts point out, qualified privilege applies and there's a concern for harassment. You want to rid the workplace of harassment. You want to encourage employees to take measures to prevent workplace harassment. And that's exactly what happened in this case. There's a social policy for preventing the harassment. You don't want the harassment to occur. And that's what we have here. It's made by a concerned employee, limited scope and purpose, and revealed to one of the proper parties. He didn't even reveal it to co-employees. There's zero evidence of that. He didn't reveal it to other supervisors to try to get him in trouble. He didn't call Mr. Harrison's supervisor. He called his industrial relations person as the uncontested, that is the right person to call. Let him start the investigation. An assembler, it's not his duty to investigate. As the court pointed out in the last decision, the Pellinack case argued that a duty to investigate on his own. That's also argued in this case, but as the court correctly points out, there's no evidence that every employee has to separately investigate before informing the company. Sean Maddox, the assembler, is not the right person to do the investigation. It's to report it to the proper chain of command. It certainly, I believe, could have been a direct supervisor. In this case, with Deere and the size of the company, they have the opportunity to have a separate industrial relations that deals with potential workplace problems, and he reports it to him. Counsel, I have a question for you. Sure. Doesn't the record show that the employer's investigation, when they spoke to plaintiff, he admitted he had had another relationship with a young lady named Solis? Yes. That he had received text messages from her on his work phone? Yes. And that was in violation of electronic policies of Deere and Company? Correct. And when he was terminated on September 3rd by Mr. Addington, didn't Addington tell him he was being terminated because of violation of electronic use policy, that he created financial risk to the company and created a risk of workplace violence? Correct. So was the sexual assault even given as a reason for termination? It was not. And when plaintiff participated in this investigation, he admitted the relationship with the married co-worker? Yes, he did. And he was married at the same time? I believe married but separated. Yes, Your Honor. Married but separated. So was there any evidence that information provided by Maddox caused the termination? No. It caused the investigation? Yes, there's no evidence that the investigation or the termination was based on the comments made when Mr. Black asked Mr. Maddox for more information. Well, this is what our co-employee, my daughter, told me what happened. And there's no evidence that it actually warranted, as you can see from the… But he wasn't terminated because there was… Even if it was, he wasn't terminated as a result. It was could be or may be is what the Deere employees said at the trial as to what was… I just wanted to make sure I had the basis of the reason for termination correct. Correct. Nothing to do with the information provided by Mr. Maddox. Counsel, that's two minutes. Thank you. The intentional interference with continued employment, I think that the court has identified the issue or one of the particular issues with that is the fact that he had nothing to do with the actual termination. Did he ask that he be fired, suspended, or encouraged to work from home? No. No evidence whatsoever of that. He just said, what will happen if I do something to him?  And then Maddox didn't do something to him? Never did. No. He was concerned about running into him, about seeing him and how he would react and what he should do. So when the qualified privilege exists, you have to prove that there was… The defense was actually done without justification. There clearly was justification here. Plaintiff likes to argue that there was a concern for his daughter, pointed out by the court. They argued a more reasonable interpretation is he wanted him fired. But there's zero evidence of that. It's just as the court identified in the other case, it's all speculation. But there's absolutely no evidence of that. That he kept repeating false claims. All he did was provide that information to Mr. Black and then answer questions from the Deere management. Whether it was Mr. Black, Mr. DeVault, Mr. Olson, who called Mr. Maddox, or Mr. Digny obviously doing the investigation. He just repeated the exact same thing that he told Mr. Black. There's no evidence that he had any involvement whatsoever with regard to his termination. Thank you very much. Thank you, Mr. Davidson. Mr. Bogan, some rebuttal? Regarding the initial communication between Mr. Maddox and the initial person that he called, he did indeed, the first thing out of his mouth was, what would happen if I went into the factory and had an altercation with the plaintiff? I think, again, there's an issue of fact there. That the supervisor had to ask him, why are you saying this? And then he said, well, because my daughter said that he raped him. It's not an indication that he wasn't acting with the intent to cause an investigation to happen and to get back at Mr. Harrison for what allegedly happened. The fact that he was responding to questions doesn't mean he couldn't control what he was saying and that he couldn't have first at least done even a modicum of investigation into what he was alleging occurred. As far as the standard on whether or not the qualified privilege would have applied, the judge made that ruling as a matter of law. He found that it was a matter of law that the qualified privilege applied, and there's a case law that says that, that the judge should do it as a matter of law. And when a judge has found something as a matter of law, the typical review standard is de novo, reexamining the facts. I also just would like to point that out as well. The final thing I would also like to point out is that it's also an issue of fact that Mr. Maddox caused the investigation. Just because he didn't necessarily have an integral role in the investigation once it got going doesn't mean he didn't intend for there to be an investigation that ultimately ended up in the firing of the plaintiff. Did he ask for an investigation? I think the reasonable expectation when you would make serious allegations, basically alleging that he committed the most heinous crime you can think of, that you would expect that something like that would happen. Like something like what? The investigation? Yeah, you would expect an investigation would occur when you make that allegation to your employer, and you would also expect there to be serious consequences. So in essence your theory is that, but for this allegation, the company wouldn't have found out about the other misconduct your client was engaged in that resulted in his firing. Well there was also no indication that Deere had any inclination to undertake any investigation of Mr. Harrison at the time all this occurred. Mr. Digny, the investigator, admitted during examination that in fact there was no pending investigation of Mr. Harrison, and that in his eyes there was at that point in time no reason to investigate Mr. Harrison. They didn't know about that relationship with the Mary Kovler? And was that an untruth? Was that something false? No, that is not false, but that's not really part of this case I guess. It was a basis for determination. It seems more like your theory is that he interfered with your client's expectation of being able to get by with continued misconduct, to which your client ultimately admitted, right? In other words, the investigation over here disclosed other unrelated misconduct that ultimately ended up in your client's discharge. And it sounds like you have some type of legal right to not have misconduct disclosed. No, that's not the argument that I'm making here. The argument is that the investigation, and Mr. Digny also admitted this, is that he was instructed to investigate possible sexual harassment and possible violence in the workplace, and that's what they based determination on. Mr. Digny also indicated on examination that he did not find any evidence of any sexual harassment or possibility of violence because he found out that the relationship with Ms. Spielberg, for example, was consensual. We'll leave it at that. But they also found on discharge that some of the other consensual relationships he was having were with spouses of other employees that worked in the factory, and reasonable people could conclude that that was going to break into a Donnybrook one day at Darwin. Does that sound reasonable? Sure. But again, I think it would also be a reasonable conclusion to say that it's something that if Dierick brought it to his attention, he could have stopped, he could have adjusted his conduct. The way that this happened and the sequence of events indicates that the causal connection is the comments made by Mr. Maddox, the defendant. So I guess I will leave it at that. Thank you, Mr. Fogan. And Mr. Davidson, thank you for your arguments here today. Both of you, the matter will be taken under advisement, a written disposition will be issued right now.